In re ROSACOMETTA, S.R.L., Debtor in a foreign proceeding.

Antonio Adinolfi, Trustee for the Liquidation of Rosacometta, S.r.l., Petitioner,

v.

Empire Marble and Granite, Inc., Sal Hasbun and Stuart R. Kalb, as their alleged Trustee and Assignee, Respondents.

No. 04–41581BKCRAM.

United States Bankruptcy Court, S.D. Florida.

Dec. 19, 2005.

James B. Miller, Miami, FL, for Stuart Kalb.

Raymond Miller, Miami, FL, for Antonio Adinolfi.

MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBERT A MARK, Chief Judge.

The Italian trustee ("Trustee") of Rosacometta, S.r.l. ("Rosacometta" or "Debtor"), an Italian corporation that is a debtor in a bankruptcy case pending in Milan, Italy (the "Italian Bankruptcy Case"), filed this ancillary case under § 304 of the Bankruptcy Code seeking to enjoin all

creditor collection activities in the United States nunc pro tunc to the date Rosacometta was adjudicated bankrupt in Italy. At issue are certain funds garnished by a creditor, Stuart Kalb ("Kalb"), assignee of Empire Marble and Granite, Inc. ("Empire Marble"). These funds (the "Garnished Funds") consist of $1,700,000 recovered by Rosacometta in litigation in state court against Gem Paver Systems ("Gem Paver"). The Trustee seeks a permanent injunction barring Kalb from proceeding against Rosacometta or against the Garnished Funds so that the Garnished Funds can be administered by the Trustee in the Italian Bankruptcy Case.

The Trustee's requested relief is the subject of cross motions for summary judgment filed by the Trustee and by Kalb. For the reasons more fully explained below, the Court recognizes the effect of the Italian automatic stay and finds void any creditor collection action in violation of that stay, including issuance of the writ of garnishment. Therefore, the Trustee's motion for summary judgment will be granted and Kalb's motion denied.

## I. Procedural and Factual Background

### A. The Empire Marble Judgment Against Rosacometta

On January 21, 2001, Empire Marble sued Rosacometta in the circuit court, Miami–Dade County, Florida, in the matter styled *Empire Marble v. Rosacometta,* Case No. 01–842–CA–02 (the "Empire Marble Case"). Rosacometta initially defended the Empire Marble Case, but ceased its defense once it entered Italian insolvency proceedings in January of 2003. On February 3, 2003, an Italian court of competent jurisdiction adjudicated Rosacometta bankrupt. Empire Marble received no notice of the Italian bankruptcy because it was not listed as a creditor in Rosacometta's books and records. On March 26, 2003, in the undefended Empire Marble Case, Empire Marble obtained a default judgment against Rosacometta for $ 1,380,000.00 (the "Empire Marble Judgment"). Approximately two months later, in May of 2003, Kalb purchased the Empire Marble Judgment.

### B. The Gem Paver Judgment in Favor of Rosacometta

The Garnished Funds at issue in this ancillary arise from a second Florida state court lawsuit which resulted in a settlement and judgment in favor of Rosacometta and against Gem Paver, specifically, Case No. 02–24134–CA 27 (the "Gem Paver Case"). That settlement was reached in May, 2004, and was ultimately embodied in a judgment in favor of Rosacometta and against Gem Paver for $1,750,000.00, entered on February 8, 2005. Kalb learned of the Gem Paver settlement, and on August 4, 2004, he served a writ of garnishment (the "Garnishment Writ") against Gem Paver, garnishing the amounts owed to Rosacometta in an effort to collect on the Empire Marble Judgment. It is undisputed that Kalb knew Rosacometta was a debtor in Italy when he obtained the Garnishment Writ.

### C. Proceedings in this Ancillary Case

The Trustee filed his voluntary petition for relief under § 304 of the Bankruptcy Code on December 13, 2004. He immediately sought entry of a Preliminary Injunction to stop Kalb from executing against the Gem Paver settlement. Following a hearing on December 23, 2004, the Court entered a Preliminary Injunction on January 3, 2005, enjoining Kalb from continuing the garnishment proceeding or otherwise pursuing collection efforts on the Empire Marble Judgment.

To avoid unnecessary expense and the risk of paying the wrong party, Gem Paver

filed an adversary proceeding for interpleader on February 1, 2005, Adv. No. 05–1034 (the "Interpleader Adversary"). On April 26, 2005, the Court entered an Agreed Summary Judgment of Interpleader. Pursuant to that Judgment, Gem Paver agreed to and has now paid $1,700,000 into an escrow account. These funds represent the Garnished Funds at issue in this case.

On April 21, 2005, the Trustee filed his Motion for Final Summary Judgment and for Entry of a Permanent Injunction (the "Trustee's Summary Judgment Motion") (CP# 38). Kalb filed his Response to Motion for Final Summary Judgment and Cross–Motion for Summary Judgment ("Kalb's Cross–Motion") (CP# 54). The Trustee filed his Reply and Response to Kalb's Cross–Motion on July 1, 2005 (CP# 57). Oral argument on the motions was presented at a hearing on July 11, 2005.

The issue is simply stated: Should Kalb be permitted to satisfy his judgment from the Garnished Funds or is the Trustee entitled to relief under § 304 recovering the Garnished Funds for the benefit of the Italian bankruptcy estate and requiring Kalb to pursue his claim in the Italian Bankruptcy Case?

## II. *Discussion*

### A. *Introduction*

This case comes before the Court under § 304 as a case ancillary to a foreign bankruptcy proceeding. Such a case is commenced if the petitioner shows that a foreign proceeding [1] is pending and that the petitioner is a foreign representative.[2] The Trustee submitted an order by a court of the Republic of Italy adjudicating the debtor bankrupt under the laws of that nation and appointing him as Trustee. Therefore, there is a pending foreign proceeding and the Trustee is a foreign representative entitled to seek relief under § 304.

Section 304 enables United States courts to aid foreign bankruptcy proceedings and accommodate the extraterritorial effect of these proceedings within the United States. *In re Gee*, 53 B.R. 891, 896 (Bankr.S.D.N.Y.1985). The primary purpose of § 304 is to prevent piecemeal distribution of a foreign debtor's assets in the United States by means of legal proceedings initiated in domestic courts by local creditors, *In re Artimm*, 278 B.R. 832, 837 (Bankr.C.D.Cal.2002), and to afford the foreign court an opportunity to assess where and when claims should be liquidated in order to conserve estate resources and maximize the assets available for distribution, *In re Bird*, 229 B.R. 90, 94 (Bankr.S.D.N.Y.1999). Therefore, although a § 304 case is a limited one, a United States court has "broad and flexible" power under § 304 to fashion relief that enables a foreign court to fairly and efficiently distribute the debtor's assets. *Gee*, 53 B.R. at 896–97.

The Trustee asks the Court to enter an injunction barring Empire Marble and Kalb from enforcing Empire Marble's claims against Rosacometta except in the Italian Bankruptcy Case. The Trustee also

---

1. 11 U.S.C. § 101(23) provides:
   "foreign proceeding" means proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principle place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization ....

2. 11 U.S.C. § 101(24) provides that a "foreign representative" means a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding ...."

requests that the injunction be nunc pro tunc to the date Rosacometta was adjudicated bankrupt in Italy. The Trustee argues that nunc pro tunc relief is appropriate because this Court should recognize the effect of the Italian automatic stay and therefore find all postpetition actions against the Debtor void.

Kalb objects to the Trustee's requested relief. He argues that service of the Garnishment Writ perfected his security interest in the Garnished Funds. Granting the injunction and allowing the Garnished Funds to go into the Italian bankruptcy estate will deprive him of his security interest, which he argues, is an impermissible or inappropriate use of § 304.

The Court rejects Kalb's arguments. First, the Court finds that Kalb is not a secured creditor since the Garnishment Writ was served *after* the commencement of the Italian bankruptcy case and therefore is void as a violation of the Italian automatic stay. This Court finds that recognition of the Italian automatic stay is "other appropriate relief" under § 304(b)(3) consistent with the overall purpose of § 304 and the specific criteria in § 304(c). As an unsecured creditor, Kalb's judgment is not secured by the Garnished Funds which should appropriately be returned to Italy where Kalb can pursue his claims along with other similarly situated creditors.

Moreover, even if the Court did not recognize the Italian automatic stay and grant nunc pro tunc relief deeming the Garnishment Writ void, Kalb's security interest in the Garnished Funds would still not defeat the Trustee's entitlement to bring these funds into the Italian proceeding.

B.  *The Extraterritorial Reach of the Italian Automatic Stay.*

■  Article 51 of the Italian bankruptcy law provides "from the date of declaration of bankruptcy no enforcement of judgments can be initiated or continued by a single creditor against assets included in the bankruptcy." Declaration of Professor Angelo Castagnola, ¶ 12 attached as Exhibit "C" to the Trustee's Summary Judgment Motion. According to Professor Castagnola, the stay applies to all collection activity, including garnishments. *Id.* If the stay applies to actions outside of Italy, and if application of the stay is appropriate under § 304, the Garnished Funds would not be subject to Kalb's Garnishment Writ since it was issued in violation of the stay.

The first issue is whether under Italian law the Italian automatic stay applies extraterritorially. The only U.S. bankruptcy court to address this issue said yes, holding that the Italian automatic stay applies extraterritorially. *Artimm,* 278 B.R. at 840. The *Artimm* court concluded that the Italian stay had worldwide effect because Italian law provides for a stay of all creditor collection activities against the debtor's property and, like U.S. law, Italian law claims worldwide jurisdiction over the property of the debtor. *Id.* at 840 (citing Eberhard Schollmeyer, *The New European Convention on International Insolvency,* 13 BANKR. DEV. J. 421, 426 n. 25 (1997) (stating that every EU country claims worldwide effect for its automatic stay and the application of its law to all estate property, wherever in the world such property may be located)). The court found additional support for this conclusion in provisions of Italian law which recognize foreign judgments and stay Italian proceedings pending the outcome of related foreign proceedings. *Id.* at 841. According to the court, these provisions indicate movement in Italian law towards handling international insolvencies under the "universal" approach, an approach

which advocates treating an international bankruptcy as a single case in which assets and creditors are treated equally wherever they may be located. *Id.* at 841 & n. 15. The court also found support for finding that the Italian automatic stay applies extraterritorially in the insolvency regulation of the European Union which imposes the Italian automatic stay throughout the Union. *Id.* at 841.

Although the determination of one bankruptcy court is not binding authority upon another bankruptcy court, the *Artimm* court's reasoning is persuasive. Therefore, the Court finds that under Italian law the Italian automatic stay has extraterritorial effect.

### C. *Recognition of the Italian Automatic Stay.*

■■■ Recognition of the Italian automatic stay as relief granted under a § 304 petition is appropriate only if such relief is consistent with the criteria of § 304(c), which states:

> In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—
>
> (1) just treatment of all holders of claims against or interests in such estate;
>
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3) prevention of preferential or fraudulent dispositions of property of such estate;
>
> (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.[3]

These factors are intended to provide bankruptcy courts maximum flexibility in aiding foreign bankruptcies and ensuring that they proceed in a rational fashion with due regard for all of the varied and competing interests at issue. *See Cunard S.S. Co., Ltd. v. Salen Reefer Services AB,* 773 F.2d 452, 455 (2d Cir.1985); *Artimm,* 278 B.R. at 837. The Court finds that these factors as applied to the facts and circumstances of this case weigh in favor of recognizing the Italian automatic stay and therefore voiding the Garnishment Writ.

#### 1. *Comity*

■■■ Many courts have stated that comity is the ultimate factor in determining whether § 304 relief is appropriate. *In re Treco,* 240 F.3d 148, 156 (2d Cir. 2001). Indeed, the "purpose of § 304 is to provide a statutory mechanism through which United States courts may defer to and facilitate foreign insolvency proceedings." *Id.* In *Hilton v. Guyot,* 159 U.S. 113, 143, 16 S.Ct. 139, 40 L.Ed. 95 (1895), the Supreme Court described comity as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens . . . ." Comity is extended to a foreign court if that court is a court of competent jurisdiction and if the laws and public policy of the forum state and the rights of its residents will not be violated. *Cunard,* 773 F.2d at 457; *In re Brierley,* 145 B.R. 151, 163 (Bankr.S.D.N.Y.1992). Comity should not be withheld unless its

---

**3.** This factor is not applicable in this case because the Debtor is not an individual.

extension would be inimical to the interest of the United States. *Cunard,* 773 F.2d at 457.

The interest of the United States in granting comity is to ensure that "the assets of a debtor are dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion." *Cunard,* 773 F.2d at 458. United States courts, therefore, have "consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Id.* at 458. Moreover, "every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes." *Id.* (quoting *Canada Southern Ry. v. Gebhard,* 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883)). Thus, U.S. "creditors of a bankrupt foreign corporation may be required to assert their claims against" the foreign debtor before a foreign court. *Cunard,* 773 F.2d at 458–59.

The Court finds that under the circumstances of this case extending comity to the Italian Bankruptcy Case and the laws of Italy is appropriate. The bankruptcy in Italy is certainly proceeding under the aegis of a court of competent jurisdiction in accordance with the laws and policies of Italy. Extending comity to the Italian bankruptcy will result in an orderly and fair distribution of the Debtor's remaining assets to all creditors by ensuring that the Debtor's assets can be collected and distributed on a worldwide basis. Moreover, the laws governing the Italian Bankruptcy Case comport with U.S. standards of procedural fairness and are not inimical to the laws or policy of the United States. This is not a case of first impression. At least two U.S. courts have previously extended comity to Italian bankruptcy proceedings. *Banca Emiliana v. Farinacci (In re Enercons Va., Inc.),* 812 F.2d 1469, 1472–73 (4th Cir.1987) (finding Italian bankruptcy sufficiently analogous to fundamental U.S. concepts of justice to warrant extending comity to those proceedings); *Artimm,* 278 B.R. at 842–43 (finding that comity not at issue where Italian law imposes an automatic stay similar to that imposed under a U.S. case).

Comity does not, however, override the other statutory factors. *Treco,* 240 F.3d at 156. The decision to extend comity under § 304 to the Italian bankruptcy must be determined in light of these other factors. *Id.*

### 2. *Just treatment of all holders of claims against or interests in such estate*

In evaluating this factor, courts have looked to whether the forum law provided for a comprehensive procedure leading to the uniform administration of the liquidation. *In re Culmer,* 25 B.R. 621, 629 (Bankr.S.D.N.Y.1982). In *Culmer,* the court cited several aspects of the forum law of the Bahamas as indicia of just treatment: supervision by the judiciary of the forum; automatic stay like provisions; voiding of post-insolvency transfers; and avoidance of preferential and fraudulent transfers. *Id.* at 629–30. Ultimately, a foreign proceeding provides for the just treatment of creditors if there is an orderly and equitable distribution among the debtor's creditors. *Id.* at 629.

This factor weighs in favor of recognizing the Italian automatic stay because the respite imposed by the stay is crucial to the just treatment of all creditors. The stay enables the Italian court to consolidate all the debtor's assets and all creditor claims against the debtor in a single pro-

ceeding. During this consolidation process assets of the debtor can be recovered and creditor claims vetted thereby maximizing the distribution to all the debtor's creditors. By contrast, denying recognition to the Italian stay in the U.S. will result in a single, aggressive creditor, who had knowledge of the Italian bankruptcy, receiving the benefit of the debtor's principle asset through a postpetition garnishment, resulting in unjust treatment of creditors as a whole. Such a result is contrary to the policy underlying § 304 and the Bankruptcy Code as a whole.

3. *Protection of claim holders in the United States against prejudice and inconvenience in processing of claims in such foreign proceeding*

■ Turning to the next factor, a U.S. claim holder is considered prejudiced or inconvenienced if there is particularized harm which it will suffer if forced to litigate in the foreign proceeding. *Brierley*, 145 B.R. at 163. The delay and enhanced costs resulting from litigating in a distant locale and under foreign laws, however, do not alone rise to the level of prejudice or inconvenience so long as the insolvency proceeding is "fundamentally fair." *Id.* Moreover, where a creditor's own actions involve it with a foreign corporation, it impliedly subjects itself to the laws of the foreign governments affecting the powers and obligations of that corporation. *Gebhard*, 109 U.S. at 537–38, 3 S.Ct. 363.

The Court finds that this factor also weighs in favor of recognizing the Italian automatic stay because under these standards Kalb will not suffer prejudice in the Italian proceeding. Italian bankruptcy law comports with U.S. notions of fundamental fairness as it provides for notice, claims processing, and distribution similar to that provided for under U.S. law. Moreover, Empire Marble, the source of

the Judgment Kalb obtained, engaged in business with Rosacometta, presumably with full knowledge that it was an Italian corporation.

Kalb claims he will suffer prejudice because the deadline for filing claims in the Italian proceeding has passed forcing him to do a late filing which will require him to litigate his claim rather than have it simply accepted. While Kalb will most likely have to litigate in the Italian proceeding to establish his claim, he is not prejudiced because under Italian law he would have had to litigate his claim even if it had been filed timely since the Debtor had no record of a debt to Empire Marble. See Supplemental Declaration of Angelo Castagnola, attached as Exhibit "A" to the Trustee's Reply and Response. dated July 1, 2005 (CP# 57).

Although Kalb's expert believes that there will be no distribution to general unsecured creditors, the Court makes no finding regarding what distribution may be available to Kalb should he decide to participate in the Italian Bankruptcy Case. If Kalb decides to participate, however, it is undisputed that the procedure to establish a claim now in the Italian Bankruptcy Case is the same as that which would have been required had Kalb filed a timely claim.

4. *Prevention of preferential or fraudulent dispositions of property of such estate*

The third factor, prevention of preferential or fraudulent dispositions, weighs in favor of relief where the law of the forum state prohibits preferential or fraudulent transfers. *See Culmer*, 25 B.R. at 630; *Gee*, 53 B.R. at 904. The Court finds that this factor weighs in favor of recognizing the Italian automatic stay because Italian insolvency law proscribes both preferential and fraudulent transfers. In addition,

withholding relief will result in awarding the swift moving Kalb an unmerited preferential position vis-à-vis the Debtor's other creditors.

5. *Distribution of proceeds of such estate substantially in accordance with the order prescribed by this title*

■ Finally, the statutory requirement under the fourth factor is that the proceeds of the estate are distributed "substantially in accordance with the order prescribed" by the Bankruptcy Code. § 304(c)(4). Substantial accordance, however, does not mean identical. *Treco*, 240 F.3d at 158. It does require the court to consider differences between priority rules in light of circumstances of the case. *Id.* at 159. The Court finds that this factor weighs in favor of relief because Kalb holds a general unsecured claim which is treated substantially the same in both Italian and U.S. bankruptcy: the claim is paid after secured and priority claims, before equity claims, and pari passu with other general unsecured claims.

In sum, this Court can and should recognize the Italian automatic stay triggered by the adjudication of Rosacometta as bankrupt on February 3, 2003, more than a month *before* entry of the Empire Marble Judgment and 18 months *before* Kalb garnished the amounts owed to Rosacometta under the Gem Paver settlement. As such, the garnishment should not be enforced and Kalb should be treated as an unsecured creditor.

In that posture, the Trustee's requested relief is compelling. The Garnished Funds are unencumbered property of the Debtor which should be administered in the Italian Case, and Kalb can and should be required to pursue his claim in that case.

D. *Even if the Automatic Stay is Not Applied to Void the Garnishment, the Trustee is Entitled to Relief*

■ As discussed earlier, the Court finds that the Italian automatic stay should be applied thereby voiding the garnishment. However, even if the stay was not applied, Kalb's security interest in the Garnished Funds would not defeat the Trustee's request for injunctive relief.

Kalb alleges that his claim is secured under U.S. law by the Garnishment Writ. He complains that his distribution in the Italian bankruptcy will not be "substantially in accordance" with that which he would receive under the U.S. Bankruptcy Code because he will be paid as an unsecured creditor in the Italian proceeding. Kalb argues that under *Treco*, a 304 petition must be denied whenever a creditor allegedly secured under U.S. laws would receive materially less in the foreign distribution than warranted by secured status.

Kalb's reliance on *Treco* is unavailing. At issue in *Treco* was whether the distribution the creditor would receive under Bahamian law was in substantial accordance where both U.S. and Bahamian law recognized the secured status of the creditor, but under Bahamian law administrative expenses had priority over secured claims. 240 F.3d at 155. Under the circumstances of the case, the court found that a secured creditor would not receive in the Bahamian bankruptcy a distribution substantially in accordance with the Code. *Id.* at 159. The lower courts, however, had passed on the issue of whether the creditor actually held a secured claim, so the court remanded the case for resolution of the status of the creditor's claim. *Id.* at 161.

As the bankruptcy court in *In re Board of Directors of CGC, S.A.*, 269 B.R. 104 (Bankr.S.D.N.Y.2001), noted, underlying the *Treco* decision were egregious factual circumstances indicating substantial ma-

ladministration by the foreign trustee. *CGC*, 269 B.R. at 109. The most salient fact was that the foreign trustees in that case charged a fifty percent premium over their standard rates and that of the $10 million collected by the foreign trustees, $8 million in administrative expenses, including the foreign trustee's fees, had been paid even though only 30 percent of the claims filed had been processed. *Id.* at 110 (quoting *Treco*, 240 F.3d at 159). In this context, the *CGC* court read *Treco* to stand for the proposition that § 304(c)(4) requires denial of § 304 relief where the court finds clear evidence of maladministration or corruption, not simply the existence of a secured claim. *Id.* at 111.

The *CGC* court did consider Kalb's reading of *Treco* and declined to adopt it. Since such a reading of *Treco* might exempt secured creditors from the operation of § 304; a consequence neither the plain language nor the policy of the section supported. *Id.* at 111 n. 8. Moreover, such a reading would fail to protect an unsecured creditor who due to serious maladministration in the foreign proceeding would not receive a distribution in substantial accordance with the Code. *Id.* Furthermore, just as comity does not mean categorical deference to foreign proceedings, *Treco* itself stated that § 304 relief should not be denied simply because § 304(c)(4) was implicated. *Treco*, 240 F.3d at 161.

Kalb's argument that he will be unfairly deprived of his secured creditor status if the Trustee prevails ring hollow. Kalb may not have had notice of the Italian Bankruptcy Case when he acquired the Empire Marble Judgment, but he certainly knew the judgment was against an Italian corporation. Moreover, Kalb did know about the Italian Bankruptcy Case when he obtained the Garnishment Writ so he knew he was pursuing assets of the Debtor postpetition in an effort to gain advantage

over the other creditors of the estate. The decisive fact is that granting relief to the Trustee preserves a major asset of the estate for distribution to all creditors furthering § 304's primary policy of preventing piecemeal distribution of the assets of foreign debtors.

### III. *Conclusion*

The Court recognizes the effect of the Italian automatic stay on creditors in the United States. As such, the Garnishment Writ is void, Kalb is an unsecured creditor, and § 304 relief is appropriate. Moreover, even if the Italian automatic stay is not recognized, Kalb's secured status still does not defeat the Trustee's compelling arguments to bring the Garnished Funds into the Italian Bankruptcy Case.

Therefore, it is—

**ORDERED** as follows:

1. The Trustee's Motion for Summary Judgment is granted.

2. Kalb's Cross–Motion for Summary Judgment is denied.

3. The Court will enter a separate Final Order granting the Trustee's prayer for relief, specifically, enjoining further collection activities by Kalb against Rosacometta in the United States and ordering release and transfer of the Garnished Funds to the Trustee for administration in the Italian bankruptcy proceeding.

### FINAL ORDER GRANTING RELIEF TO FOREIGN REPRESENTATIVE UNDER 11 U.S.C. § 304

In accordance with this Court's December 19, 2005 Memorandum Opinion and Order on Cross–Motions for Summary Judgment; it is—

**ORDERED** as follows:

568

1. Petitioner, Antonio Adinolfi's Motion for Final Summary Judgment and for Entry of Permanent Injunction is granted.

2. Creditor/Respondent Stuart Kalb's Cross–Motion for Summary Judgment is denied.

3. Respondents, Empire Marble and Granite, Inc., Sal Hasbun, and Stuart R. Kalb (individually or as trustee), are permanently enjoined from engaging in any collection activities against Rosacometta in the United States.

4. The funds paid into escrow by Gem Paver Systems, LLC, in settlement of claims against it by Rosacometta and pursuant to an Agreed Summary Judgment of Interpleader entered by this Court on April 26, 2005, in Adv. No. 05–1034 (the "Garnished Funds") shall be released to the Petitioner for administration in the bankruptcy proceeding of Rosacometta, presently pending in Milan, Italy.